LAMONS et al. v. MATHES et ux.—232 S. W. (2d) 558.

Eastern Section.   July 11, 1950.

Petition for Certiorari denied by Supreme Court, August 31, 1950.

Kilgo & Armstrong, of Greeneville, for appellants.

Milligan & Haynes, of Greeneville, for appellees.

McAMIS, J. Complainants G. Stewart Lamons and H. V. French instituted this suit against Dr. G. F. Mathes and wife to enjoin the obstruction of a walkway 5 feet in width running from the French property, along the easterly side of the Mathes lot, to Irish Street in Greeneville. The Chancellor dismissed the bill and complainants have appealed assigning numerous errors.

In 1937, defendants, Mathes and wife, purchased a lot fronting 99 feet on the south side of Irish Street from C. M. Babb. In the negotiations Babb pointed out to Dr. Mathes the existence of the walkway here in question which the record shows had been used by members of the African Methodist Episcopal Zion Church as a means

of access to a church located on the lot at the rear of the Mathes lot formerly owned by the Church. However, although the walkway had been used at that time for a period of 60 years or more and was enclosed on both sides by a fence, Babb represented to Dr. Mathes, doubtless in good faith, that the use of the walkway by members of the Church was purely permissive. No mention was made of the existence of the walkway in the deed from Babb to Mathes, and the latter made no inquiry to determine the rights of the Church.

Complainant French purchased the Church property on March 23, 1948, the deed including as a part of the conveyance "a walkway leading to the above described premises from West Irish Street 5 feet in width lying between the property of Dr. Frank Mathes on the west, property of Elmer Myers and G. S. Lamons on the east. Being the same walkway conveyed to said Trustees of said Church by deed of Sarah Rudder, dated December 1875, of record in said Register's Office in deed book 146, page 151." Upon obstructions being placed in the walkway by Dr. Mathes, the bill in this case was filed June 18, 1948. It is the theory of complainant French that the deed from Sarah Rudder to the Church, though not recorded until January 10, 1941, should have been admitted and given efficacy by the Chancellor as an ancient document but that, if not entitled to rely upon the Rudder deed, he and his predecessor in title, the Church, acquired a prescriptive right by adverse user of the walkway for approximately 60 years. The complainant Lamons bases his right to continue using the walkway purely upon adverse possession and use for more than 50 years by himself and his father, his predecessor in title, as the owners of a lot adjoining the Church property.

Defendants, on the other hand, insist, as the Chancellor held, that they and their predecessors in title have had the exclusive, adverse, open and notorious possession of their lot to its extreme width of 99 feet, under registered color of title, for more than 7 years and, in fact, for more than 20 years. They rely upon the 7 year statute of limitations, the 10 year statute of limitations and 20 years adverse possession.

Complainants offered a certified copy of a purported deed from Sarah Rudder to Trustees of the Church dated December, 1875, and bearing the purported attestation of Zachariah Barnett and W. W. Adams. The certified copy shows a certificate of the Clerk of the County Court of Greene County dated October 28, 1895, reciting that J. W. Rudder appeared before him on that date and, being duly sworn, stated that he was familiar with the signature of Sarah Rudder and with her handwriting and that the signature appearing on the deed was her genuine signature, also that the attesting witness Barnett, being duly sworn, "deposed and said that his signature as a subscribing witness was in his own handwriting, but could not after the lapse of so many years say that Sarah Rudder had acknowledged the execution of the same."

We think the certificate of the Clerk shows upon its face that the instrument was not properly acknowledged. Execution of the deed was not established under Code Section 7630 authorizing registration of an instrument "proved by two subscribing witnesses, at least" because, according to the certificate, only one of the subscribing witnesses appeared before the Clerk. Code Section 7641 provides that an instrument may be proved by two persons acquainted with the handwriting of the person who executed the instrument and the certificate of the Clerk as to J. W. Rudder is, perhaps, sufficient to

comply with that Section of the Code, though we do not decide the point. The statement as to Zachariah Barnett fails to show that he was acquainted with the handwriting of the maker, as required by Section 7641. The Chancellor was correct in holding that the deed was not properly admitted for registration and, in consequence, that a certified copy of the purported instrument was not admissible as evidence. Batte v. Stone, 12 Tenn. 168. Was the proof, contrary to the Chancellor's holding, sufficient to establish the Sarah Rudder deed to Trustees of the Church and to entitle complainants to introduce it as an ancient document or, more accurately stated, secondary evidence of a lost ancient document?

The record shows that, shortly after Dr. Mathes purchased his lot, he began to interfere with the use of the walkway. Thereupon, the Trustees of the Church went to the Office of the Register of Deeds for Greene County but failed to find of record any deed conveying the walkway or the lot upon which the Church was located. They then made inquiry of the widow of James Broyles who, as Chairman of the Board of Trustees at the time of his death, would have been the proper custodian of the deed. Complainants offered hearsay testimony that the deed was found in an old trunk belonging to Broyles. Objection to this testimony was properly sustained but we think there is competent evidence that inquiry was made of Broyles' widow and that, following the making of such inquiry, an instrument purporting to be a deed from Sarah Rudder to Trustees of the Church came into the possession of the Trustees and was, by them, taken to the Office of the Register of Deeds and offered for registration.

The substance of the testimony of the Register is that he recalled Trustees of the Church coming to his office and looking for deeds and later, on January 10, 1941, that

they brought into his office the original of the instrument to which he certified, being a deed from Sarah Rudder to Trustees of the Church and that "the handwriting on the paper looked old and the ink looked old . . . you can look at an instrument and tell whether it is old or not." We quote further from his testimony:

"After you placed that deed of record, did you compare that deed with the record to be sure every word in the deed was correctly copied on the record?

"We compare all of our deeds.

"When the certificate is placed on there, do you make another comparison to see that it is correctly transcribed from the record? Yes, sir, we compare the deeds.

"When you transcribe it into the record? Yes, sir."

Within a month after this purported instrument was left with the Register, Dr. Mathes learned of its existence and, upon failure of the parties to agree upon a purchase of the Church lot and the walkway by Dr. Mathes, he made no further efforts to extend the possession of his lot in a manner to obstruct the walkway but, on the contrary, planted a hedge 5 feet from the easterly side of his lot and, apparently, otherwise refrained from encroaching upon it until shortly before the filing of the bill, a period of approximately 7 years. Meanwhile, the walkway was continuously used by members of the Church.

█ (a) In Woods v. Bonner, 89 Tenn. 411, 418, 18 S. W. 67, 69, it was said: "The general rule is that a private deed over 30 years old . . . may be admitted in evidence without proof of its execution; that, being an ancient document, its due execution is presumed, and the subscribing witnesses, though in fact living and present, need not be called to establish the fact, provided the instrument be found in the proper custody, and is free from suspicion as to its genuineness. . . ."

■ Refinements of the rule, considered pertinent here, were later approved in Sage v. Dayton Coal & Iron Co., 148 Tenn. 1, 5, 251 S. W. 780, 781, which we quote: ''The mere antiquity of an instrument is not alone sufficient to warrant its admission in evidence, but it must also appear that the instrument comes from the proper custody or depository, it being considered that the careful preservation of an instrument by persons interested in the subject matter raises an inference of genuineness, which does not arise where the instrument is in the custody of strangers. Documents are said to be in proper custody where they are in the place in which, and under the care of the person with whom, they would naturally be, but no one custody will be deemed a necessary one, nor can any custody be said to be improper if it is proved to have had a legitimate origin, or if the circumstances of the particular case are such as to render such an origin probable. Accordingly, the custody to be shown for the purpose of making a document evidence without proof of execution is not necessarily that of the person strictly entitled to the possession. *It is enough if the person in whose custody the document is found is so connected with the document that he may reasonably be supposed to be in possession of it without fraud. If an ancient document is produced from the proper custody, as for instance if it is found among the family papers of the persons entitled thereto, or in the hands of a trustee of an estate, of an heir or the wife of the grantee, or of an agent or attorney of the parties beneficially interested it is admissible; and in such cases it is not necessary to account for its custody during the entire period of its existence.''* (Emphasis supplied.)

■ We think the document in question meets this test. It bears nothing suspicious upon its face and it seems to

us unreasonable to assume that trustees of a nonprofit, religious institution would have conjured up a scheme to take a spurious deed to the County Court Clerk in 1895 and then preserve it until the present controversy arose. Again, it seems to us hardly plausible to assume that one bent upon forgery would insert a provision favorable to the grantor, for moving the fence and smokehouse. To the contrary, we think the deed shows upon its face that it was not a unilateral document but that the grantor had a part in the formulation of the agreement as, for example, the provision that the conveyance of the walkway was to be of no binding effect until the smokehouse should be moved and the fence rebuilt upon the new line. Its authenticity is further corroborated by the continuous and uninterrupted use of the way and, as will appear, under claim of right by deed.

We find nothing inconsistent with good faith in the loss of the paper or its custody. It is common knowledge that records and papers of unincorporated associations, as the officers change, pass from one person to another and not infrequently are lost in the course of years. What is the business of a number of persons becomes the business of none. Despite all this, however, the paper in question here was found when inquiry was made of the widow of a former Chairman of the Board of Trustees and, very significantly, the deed to the church lot about which there is no question was recovered from the same custody.

As appears from the testimony of the Register, upon being recovered and offered for registration, it bore physical evidence of antiquity.

■ (b) We come next to the question of whether the certified copy should have been admitted as secondary evidence of the deed which was again lost after being

copied on the Register's book in 1941. We think the evidence shows a sufficiently diligent search for the original to admit secondary evidence of its contents, especially in view of the unimpeached testimony of a public official entirely disinterested in the result of the present litigation that it appeared to be an old paper. This is the only question about which there could arise any serious question in view of the Register's testimony that it was checked when copied on the books and that the certified copy was checked with the book before it was delivered to complainants. Under this testimony, while the copy offered is not admissible as a certified copy under the statute, it becomes for practical purposes an examined copy of the original.

We recognize that a strong case might be made for excluding an examined copy of a lost ancient paper in the absence of clear and convincing evidence, here present, that the original bore physical evidence of ancient origin or unless there is evidence of the due execution of the original document or of concomitant possession by the purported grantee. All of these elements, except proof of execution, concur to support the hypothesis of the existence of a valid ancient grant in the present case. Added to this is the circumstance that, though not placed of record until 1941, the original was presented to the County Court Clerk more than 50 years before the copy was offered in evidence. See Woods v. Bonner, 89 Tenn. 420, 18 S. W. 67, 69, involving the admission in evidence of a certified copy of a deed placed of record in the wrong county, where it was said: ''The age of the paper is demonstrated by the fact of registration, though not in the proper county, for 32 years before this suit was commenced.'' So, in this case, though the acknowledgement was invalid, the fact that it was in the hands of the Coun-

ty Court Clerk can be used as a basis for inferring its existence on the date of the official certificate of the Clerk.

We think the evidence is clear and convincing, Roysdon v. Terry, 4 Tenn. App. 638, 645, and the assignment complaining of the exclusion of the certified copy as evidence is, accordingly, sustained.

■ Complaint is also made of the exclusion of testimony of the witness Byers to the general effect that the Church Trustees stated that the Church had the right to use the walkway under an express grant by deed. We think this evidence competent as tending to establish the nature of the holding. Insurance Co. v. Shoemaker, 95 Tenn. 72, 85, 31 S. W. 270; 2 C. J. S., Adverse Possession, sec. 223, p. 834; 1 Am. Jur. 926. The assignment complaining of this ruling is sustained.

If we are correct in admitting this evidence and in holding that complainant French was entitled to have the certified copy of the Rudder deed admitted as an ancient document, it follows that there is evidence that the Church's use of the way was adverse and not permissive. An entry under color of title affords some evidence of the character of possession. Ingram v. Jeffersonville, N. A. & S. Rapid Transit Co., 65 Ind. App. 532, 116 N. E. 12; Proprietors, etc., v. Laboree, 2 Me. 275, 11 Am. Dec. 79; Sumner v. Murphy, 2 Hill 488, 20 S. C. L. 488, 27 Am. Dec. 397.

■ We cannot agree with the holding of the learned Chancellor that under the evidence the use of the way was permissive and not adverse. C. M. Babb did testify that the use was permissive but when his testimony is analyzed it is apparent that his statement is not based upon his personal knowledge. Evidence merely that Mr. Babb and later Dr. Mathes did not object to the use of the way by church members and others cannot be considered as

showing a permissive use. As pointed out by counsel, if failure to object could be considered evidence of permissive use the holder of the legal title could always defeat an adverse claimant by merely showing that he had never objected to the use of his property.

As noted in Peoples v. Hagaman, 31 Tenn. App. 398, 215 S. W. (2d) 829, it is not essential that the use of the adverse claimant was challenged and the use continued over the objection of the true owner. And see to the same effect Gibson et ux. v. Shular, 29 Tenn. App. 166, 194 S. W. 2d 865, there cited.

We think Bensdorff et al. v. Uihlein et al., 132 Tenn. 193, 177 S. W. 481, 2 A. L. R. 1364, sustains the claim of adverse possession by complainant French and his predecessor, the Church. As there held, adverse possession may be shown by such use and occupancy as the nature of the property admits and it is not necessary that the property be completely enclosed if to enclose it would destroy its chief value. And see cases there cited, all to the same effect. Applying these principles it was held that placing a pavement over the land claimed and using it as a means of access to other property of claimant was sufficient to put the owner on notice that a hostile claim was being asserted to his land, and that the use of the way by the public, as here shown, did not destroy the exclusiveness of claimant's possession.

In Peoples v. Hagaman, supra, it was held that the grading and using of a well defined driveway was effective to give the true owner notice of an adverse use of his property—that, generally, the open and visible use of the property inconsistent with possession by the true owner is notice to the world that the claim is adverse.

The walkway was provided with permanent steps at the street line and enclosed on two sides for more than

50 years, during all of which time the use was continuous and open and under a claim of right.

The argument is made by able counsel for defendants that, at the time of the execution of the Rudder deed to the Church, the record owner was known as Sallie Rudder and not Sarah Rudder, the name used in the deed, and from this it is insisted the deed must have been executed by a granddaughter, Sarah Rudder, who had no title. However this may be, we think it is wholly immaterial to the result. The deed was clearly color of title sufficient to corroborate the hostility of the possession of the Church, 2 C. J. S., Adverse Possession, secs. 60, 72, pp. 580, 591, though, because not legally registered, it cannot serve to shorten the period of possession to 7 years under the statute. See also Hubbard v. Godfrey, 100 Tenn. 150, 47 S. W. 81.

We also consider it immaterial whether complainants have another outlet to their property. Complainant French evidently considered the walkway of importance since it was conveyed by his deed from the Church and he testified he would not have purchased the lot without it.

Complainant Lamons has no title to the way and, as to him, we do not find that the evidence preponderates against the Chancellor's findings on which the bill was dismissed.

The decree will be reversed as to French and affirmed as to Lamons. Costs, including costs of appeal, will be divided, one-fourth to Lamons, and three-fourths to defendants-appellees.

Hale and Howard, JJ., concur.