**Arthur Lee GERMAN and wife, Allie Mae German, Complainants-Appellants,**

**v.**

**Earl J. GRAHAM, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section.

Jan. 26, 1972.

John S. Wilder, Wilder & Whitaker, Somerville, for complainants-appellants.

John W. Norris, Brownsville, for defendant-appellee.

CARNEY, Presiding Judge.

After the suit below was filed, the complainant Arthur Lee German died testate devising all of his property to his wife, the complainant Allie Mae German, and the suit was revived in her name as sole complainant. The complainant Mrs. Allie Mae German has appealed from a decree of the Chancellor dismissing their original bill seeking a permanent injunction against the defendant Earl J. Graham from blocking a road known as the Log Dump Road across his lands from the southeast corner of the German property to the Arlington-Warren-Griffin Store county blacktop road in Fayette County, Tennessee.

Complainants contended that they had a prescriptive right over said road as a means of access from the southern boundary of their farm to said county blacktop road. The Chancellor found that the road in question had been used by the complain-

ants and their predecessors in title continuously over a period of more than 40 years; that at various times during the years the county had graded the road and placed gravel on portions thereof; that as far back as 1912 the road was used as an access to a school which was maintained in a log building on the German farm. The log building in 1914 became the mansion house of John N. German, father of the complainant Arthur Lee German, and a predecessor in title of the complainants. Log Dump Road crosses the new Somerville-Warren-Griffin Store blacktop road and extends southward therefrom but the part south of the blacktop road is not in litigation.

When the old log schoolhouse dwelling burned about 1935, the complainant Arthur Lee German built a new home on the same site and occupied the same continuously until 1966. He used the Log Dump Road continuously as a means of ingress and egress to and from the public road until 1966.

In 1966 the complainants were advanced in years and moved from the dwelling partly because of the impassability of the Log Dump Road and the refusal of the defendant Graham to permit them to improve the road or get the county to gravel it. They moved into a trailer on a 2-acre plot owned by their son James E. German, at the northeast corner of the farm. Their farm tenant continued using the Log Dump Road as access to the farm until 1969 when defendant blocked the road.

Defendant Earl Graham purchased some 356 acres of land lying south and east of the German 150-acre homeplace in 1956 from John Ozier. The surveyor's map or plat of the farmlands purchased by Graham which was delivered to him along with his deed to the property showed the Log Dump Road running from the German southeast corner to the county blacktop road across the Ozier lands but it was not designated by name on the plat.

From His Honor the Chancellor's finding of fact we quote as follows:

"The proof further shows that the first time any hostile issue occurred about the road was since the defendant purchased the property, which he had owned for some twelve or thirteen years.

\*    \*    \*    \*    \*    \*

This Court understands hostile and adverse possession to mean that the holder of the right or easement or other lands or tenements must claim adversely against an alleged owner and exert his right hostilely in order to acquire an easement or title to other lands by adverse possession, or under the doctrine of prescription.

It is unfortunate and concerns the Court to a great extent that this roadway has been blocked, but under the law of this state, there is no other recourse that this Court can make other than to hold that the use of the road in question was permissive up until the time this issue arose, and such permissiveness by the defendant and his predecessors in title certainly does not constitute, under the facts of this case, the necessary requirements to enforce the doctrine of prescription."

The first conveyance proven in the complainants' chain of title to the 150-acre tract is a deed from Kyle et al. to Murrell in 1910 to 175 acres of land at a purchase price of $2,250.00. The 175 acres conveyed therein was described as a rectangle. The east and west lines were 160 poles long; the north and south lines were 175 poles long. The deed did not make any reference to any public road. However, the proof is undisputed that the old and now abandoned Arlington-Somerville public road ran generally in an eastern and western direction parallel with the south line of the Murrell 175-acre tract and at the point where the old Arlington-Somerville Road crossed the

Log Dump Road it was 630 feet south of the southeast corner of the Murrell land now owned by the complainant Mrs. Allie Mae German.

The old Somerville-Arlington public road which traversed the lands now owned by defendant Graham from east to west was abandoned and closed in 1928. Graham now has a pond dug in part of it. Traffic on the old road was diverted to the new Somerville-Warren-Griffin Store Road.

In 1912 Murrell sold to Stafford 25 acres off the north side of the 175-acre tract of land leaving 150 acres of land which were later sold to the father of the complainant Arthur Lee German in 1914. The proof is uncontradicted that in 1912 there was a log dwelling located in the southeast corner of the 150-acre Murrell tract at least one room of which was being used as a school. The access to the school and log dwelling from the public road was north along the Log Dump Road. The proof does not show the owners in 1912 of the land immediately south of the Murrell, now German, 150-acre tract; nor does the proof attempt to show when the Log Dump Road was first used as an access to the Murrell lands. Witnesses only say they attended school there in 1912 and used the Log Dump Road.

On May 11, 1914, Murrell conveyed to J. N. German, father of the complainant Arthur Lee German the remaining 150-acre tract of land for a purchase price of $2,300.00. This deed described the land by courses and distances but made no reference to public roads.

On September 1, 1917, M. I. Stafford conveyed to J. N. German a right-of-way 15 feet wide and 22.36 poles or 5.59 chains long across the east side of the 25-acre tract of land conveyed by Murrell to Stafford above mentioned. The consideration was $5.00. The northern terminus of this roadway is what is described in the testimony as being a dead-end county road known as Stafford Road. It runs east-

ward along the north line of the defendant Graham's property and then turns at right angles southward along the east line of the defendant Graham's property and intersects and dead-ends into the present blacktop Somerville-Warren-Griffin Store Road.

There is no proof that John N. German ever used the roadway purchased from Stafford as a means of ingress and egress to his farm and the preponderance of the evidence is to the contrary. He lived at the extreme southeast corner of his 150-acre farm nearly one-half mile from his northeast corner. Maintenance of a road across his farm would have been very costly and use of such roadway would have required him to travel more than two miles farther each time he left his home to go either to the old Arlington-Somerville Road or to the present Somerville-Warren-Griffin Store Road and two miles to return home.

On November 23, 1917, J. N. German and wife executed a deed of trust on their farm of 150 acres together with the roadway purchased from Stafford to secure an indebtedness to the Union Central Life Insurance Company. We think it more probable that German and wife purchased the roadway from Stafford, not for the purpose of obtaining access to their farm but for the purpose of satisfying the closing requirements of some title examiner for the Union Central Life Insurance Company who had probably noticed that the description of the 150-acre German farm did not call for any public roadway. Very probably Stafford realized that German did not intend to use the roadway because he only charged him $5.00 for the same.

On October 9, 1964, A. L. German and wife deeded two acres of land out of their northeast corner to their son, James E. German, for a home site. The two acres cut off the Stafford Roadway from the remainder of the German 148-acre farm and James E. German deeded to A. L. German et ux a roadway across the two acres to the Stafford Roadway.

There is no proof in the record that John German ever asked any of defendant Graham's predecessors in title for permission to use the Log Dump Road. John N. German had died before April 7, 1934, when the deed of trust to the Union Central Life Insurance Company was foreclosed and the complainants Arthur Lee German and wife, Allie Mae German, bought the 150-acre farm of their father, John N. German. They continued to use the Log Dump Road as the access road to their farm continuously from 1934 to 1956. There is no proof that they ever asked anyone for permission to use said road as an access road from the date of their purchase in 1934 until the date of the purchase by defendant Graham of the Ozier lands lying on each side of the Log Dump Road in 1956. At the time of the purchase of the Ozier lands by defendant Graham in 1956, the eastern margin of the Log Dump Road was fenced.

When defendant Graham bought the Ozier lands he was given actual knowledge that A. L. German and wife were using the road as the access road to their farm. From 1956 until 1966 Graham never asked by what authority A. L. German and wife used the road and never made any complaint or objection to their use of the road. A. L. German never asked the new owner, Graham, for permission to use the road. Such conduct by the parties indicates that Graham understood that German was using the road under a claim of right and not by permission. It was only after A. L. German requested defendant Graham to give the roadway to the county to get it graveled and thus make it a public road did Graham question the right of A. L. German and wife to use said roadway.

▮ The law is clearly established in our state that twenty years' adverse user will establish a right-of-way either in the public or in private persons. Morgan County v. Goans, 138 Tenn. 381, 198 S.W. 69; Ferrell v. Ferrell, 60 Tenn. (1 Baxter)

329. It is not essential to establish adverse user that the claimant show actual hostility between him and the owner of the servient estate. As stated in one of our earlier cases the owner of the servient estate might defeat the claimant's right of prescription by testifying that he never objected to the claimant using the road regardless of for how long a period. Lamons v. Mathes (1950), 33 Tenn.App. 609, 620, 232 S.W.2d 558.

His Honor the Chancellor apparently was of the opinion that the case of Blakemore v. Matthews (1926), 154 Tenn. 334, 285 S.W. 567, was controlling of the case at bar. A study of the Blakemore case reveals several determinative differences from the case at bar: (1) In the Blakemore case the complainant proved only that he had used the roadway for twenty years without objection from the defendant. (2) In the Blakemore case the complainant offered no evidence tending to show that he used the roadway under a claim of right rather than by permission of the defendant. (3) In the case at bar the complainants proved that their predecessors in title had used the roadway for more than twenty years as the only access used by them to and from said farm. (4) The complainants in addition proved that after they came into the possession of the 150-acre farm in 1934, they used the roadway for an additional period of twenty years as access to the farm, all before the defendant ever bought the servient estate. (5) The defendant bought the servient estate with actual knowledge that the complainants had been using and were using the roadway as the access to their farm and for a period of twelve years thereafter never asked the complainants by what authority they used said roadway. Therefore, we hold that Blakemore v. Matthews is not applicable to the case at bar.

The cases of Nashville Trust Company v. Evans (1947), 30 Tenn.App. 415, 206 S.W.2d 911, and Bowles v. Chapman (1943), 180 Tenn. 321, 175 S.W.2d 313, are

also cited by solicitor for appellee to sustain the holding of His Honor the Chancellor. A study of these cases reveals that the factual situation in each of these cases is entirely different from the facts of the case at bar.

In our opinion this case is controlled by the case of House v. Close (1961), 48 Tenn.App. 341, 346 S.W.2d 445, opinion by Judge Humphreys, now Justice Humphreys of the Tennessee Supreme Court. We quote from the very fine opinion of Justice Humphreys as follows:

". . . the use must be under a claim of right inconsistent with or contrary to the interest of the owner and of such a character that it is difficult or impossible to account for it except on the presumption of a grant; or use under a claim of right known to the owner of a servient tenement; or use whenever desired without license, or permission asked, or objection made such as the owner of an easement would make of it, disregarding entirely the claims of the owner of the land. . . . ."

We hold that the complainants had acquired an easement by prescription in the Log Dump Road long before defendant ever bought the servient estate in 1956 and he bought the land subject to said easement. The assignments of error are sustained and the decree of the lower Court reversed. Decree will be entered in this Court in favor of the complainant in accordance with this opinion and the cause remanded to the lower Court for enforcement of the decree and other proceedings consistent with this opinion. The costs in the Court below and in this Court are taxed against the appellee.

MATHERNE and NEARN, JJ., concur.