| | | |
|---|---|---|
| KEVIN SANDERS and wife, | ) | |
| PATRICIA SANDERS, Property | ) | |
| Owners and Citizens of Lincoln | ) | |
| County, Tennessee, | ) | |
| | ) | |
| Plaintiffs/Appellants, | ) | Appeal No. |
| | ) | 01-A-01-9705-CH-00222 |
| VS. | ) | |
| | ) | Lincoln Chancery |
| JERRY MANSFIELD, County | ) | No. 10,743 |
| Executive, and DONNY RAY HUDSON, | ) | |
| Road Superintendent, Both of | ) | |
| Lincoln County, Tennessee, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

**February 13, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF LINCOLN COUNTY
AT FAYETTEVILLE, TENNESSEE

THE HONORABLE LEE RUSSELL, SITTING BY INTERCHANGE


WILLIAM W. BURTON
P. O Box 960
401 West Main Street
Murfreesboro, TN 37133-0960
        Attorney for Plaintiffs/Appellants

ROBERT W. SIMMS
P. O. Box 53
104 North Main Street
Fayetteville, Tennessee 37334
        Attorney for Defendants/Appellees


AFFIRMED AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.


# O P I N I O N

The primary question in this appeal is whether a road that splits the appellants' farm is a public road. Kevin Sanders and his wife filed suit against two Lincoln County officials, to enjoin enforcement of a county resolution that required them to remove stock gaps on a road that crossed their farm. The trial court dismissed the complaint and granted the defendants' counterclaim to enjoin the plaintiffs from willfully allowing their cattle to roam at large along the road. We affirm the trial court.

I.

Mr. and Mrs. Sanders own a 316 acre farm in Lincoln County. According to Mr. Sanders' testimony, he and his family have had a cattle-raising operation on the land for 25-30 years. Martin Hollow Road, which crosses their property, provides the sole access to the Sanders' home and to a trailer for their tenant, as well as to the five homes currently beyond the farm. The testimony of seventy-seven year old Howard Martin, who has lived in the area all his life, was that the road was named for his great-grandfather, and that it had always been a public road for as long as he could remember.

Lincoln County has maintained Martin Hollow Road at least since 1975. The County brought in gravel as needed, graded the road on a monthly basis, and built culverts and a twelve foot concrete bridge over a creek on the Sanders' land. According to the testimony of defendant Donny Hudson, Martin Hollow Road was included on the county list as a "4th Class County Road" when Mr. Hudson acquired the list, upon becoming Lincoln County Road Superintendent in 1982.

At the time this suit was filed, the plaintiffs maintained stock gaps (or cattle guards as they are also known) at the two points where Martin Hollow Road crossed their property lines. The stock gaps and the fencing around the property prevented Mr. Sanders' cattle from wandering onto his neighbors' land. But because

the pastures on both sides of the road were unfenced, the cattle crossed the road at will, especially when they were fed near the road. This situation led to many complaints by the other users of Martin Hollow Road, and to several accidents and near-accidents with schoolbuses and private automobiles using the road.

The problem of cattle roaming on Lincoln County roads because of inadequate fencing is apparently not confined to Martin Hollow Road. On July 22, 1996, the County Highway Committee, under the leadership of Donny Ray Hudson, recommended the removal of stock gaps on all county roads as a way to deal with the problem. The Lincoln County Board of Commissioners did not adopt the Committee's recommendation at that time, but apparently agreed with the need to address the problem. The Board instructed Jerry Mansfield, the defendant County Executive, to send letters asking landowners who allowed their livestock to run at large to properly fence their property.

Such letters were sent to Mr. Sanders and to three other landowners. Mr. Hudson followed-up by talking to the recipients of the letters. The other landowners agreed to comply, by fencing their land, or by otherwise taking steps to keep their cattle off the roads. Mr. Sanders was not willing or able to fence his property off from Martin Hollow Road because of the considerable expense involved, and he was unwilling to remove his stock gaps. After consulting with the Office of the Attorney General about the County's authority to remove stock gaps from its roads, the Legislative Body of Lincoln County passed a resolution on March 17, 1997 to have the stock gaps on Martin Hollow Road removed.

On April 4, 1997, the plaintiffs filed a complaint in the Chancery Court of Lincoln County to enjoin enforcement of the County's resolution. The defendants filed an answer and counterclaim, in which they stated that Martin Hollow Road was a public road, and they asked the court to order Mr. Sanders to erect fences on both

sides of the road, and/or to take other necessary steps to prevent his cattle from roaming at large on the road. The Sanders' response to the counterclaim admitted that the road was public, but denied that they allowed their cattle to "roam at large" or that the presence of the stock gaps had ever been the source of any problems.

After an extensive hearing, involving the testimony of eighteen witnesses, the court found there to be a dangerous situation on Martin Hollow Road, and dismissed the plaintiffs' suit. The court further found that it did not have the power to order a mandatory injunction to compel Mr. Sanders to erect fences on his land, but it did order him to refrain from willfully allowing his cattle to roam at large on or across Martin Hollow Road. This appeal followed.

## II. County Road or Private Road?

As the trial court noted, there was very little dispute as to the facts of this case. There is also very little dispute as to the county's right to remove obstructions from its roads, including gates and cattle guards. See Tenn. Code Ann. §§ 54-10-108, 110 and AG Opinion U97-003 (January 27, 1997). The court also has the right to enjoin owners of livestock from willfully allowing their animals to run at large. Tenn. Code Ann. § 44-8-401.

The appellants' chief argument on appeal is that Martin Hollow Road is a private road, and that the County therefore has no right to order them to remove stock gaps from their own property.[1] They also argue that the Board's resolution of March 17, 1997 was unconstitutional, and therefore void, because it was directed against them personally in violation of the equal protection clause. We will examine the question of the status of the road first.

_____

[1]We have noted that the appellants admitted in their answer to the counterclaim that the road was a public road. While that would ordinarily conclude the inquiry, we think the proof also shows it was a public road.

The appellants note that they have a good title deed to all the acreage within their boundaries, and that there is no record of them (or their predecessors in interest) ever explicitly dedicating a portion of their land for a public road. They also contend that the other inhabitants of Martin Hollow Road cross their land by permission, thereby excluding the possibility of a claim based upon any adverse rights whatsoever.

A public road may be created ". . . by an act of the public authorities, or the express dedication by the owner, or an implied dedication by means of the use by the public and acceptance by them with the intention of the owner that the use become public, or by adverse user for a period of 20 years continuously creating a prescriptive right . . ." *Standard Life Insurance Co. v. Hughes*, 315 S.W.2d 239 at 242 (Tenn. 1958). There is no proof in this case that the county condemned a right of way across the appellants' farm or that the appellants expressly dedicated the road to public use. We do think, however, that the facts support an implied dedication and acceptance by the county and/or a prescriptive right obtained by adverse use for more than twenty years.

**a. Dedication**

To establish a dedication by implication "there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct." *McKinney v. Duncan*, 118 S.W. 683 at 684, 121 Tenn. 265 at 271 (Tenn. 1908). The Supreme Court relied on this rule in *Cole v. Dych*, 535 S.W.2d 315 (Tenn. 1976), and added the following quote from

*Woolard v. Clymer*, 35 S.W. 1086 (Tenn. Ch. App. 1895): "[W]hen a road runs across private property, and is used by the public as a common road, without interruption for 50 years, the owner acquiescing in such use, the law will presume a dedication for such purpose." 35 S.W. at 1088. "Indeed, from long use, without objection of the owner, it may be inferred or presumed that such use and enjoyment had a legal origin." *Cole v. Dych*, 535 S.W.2d at 319 (Tenn. 1976). An implied dedication does not depend on use by the public for any definite period of time; "but it ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." *Scott v. State*, 33 Tenn. 629 at 633 (1854).

The Sanders acquired their farm in 1989. Although the record is not clear on this point, the farm had apparently been in the Sanders family since the 1960s; therefore Mr. and Mrs. Sanders were aware when they acquired the property that the road had been used by the public for many years. As we have pointed out a seventy-seven year old man, who grew up in the area and at one time owned one of the farms beyond the Sanders place, testified that the public had used the road for as long as he could remember. The road has been carried on the Lincoln County records as a county road at least since 1982. The County has for many years maintained the road, graveled it, and built culverts and a bridge on the portion of the road crossing the Sanders' land.

We think the record shows that the road had become a public road by implied dedication and acceptance by the public.

**b. Prescriptive Easement**

The requirements for establishing a prescriptive easement are substantially the same as those required to establish title to real estate by adverse

possession. *House v. Close*, 346 S.W.2d 445 (Tenn. App. 1961). The adverse possessor must carry the burden of establishing adverse possession by clear and positive proof. *McCammon v. Meredith*, 830 S.W.2d 577 (Tenn. App. 1991). The elements required to establish a prescriptive easement have been stated by this court as follows: "[t]o create a prescriptive easement, the use and enjoyment of the property must be adverse, under a claim of right, continuous, uninterrupted, open, visible, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period." *Pevear v. Hunt*, 924 S.W.2d 114, 116 (Tenn. App. 1996). Twenty years of adverse use is the prescriptive period required to establish a right-of-way in either the public or in private persons. *German v. Graham*, 497 S.W.2d 245 (Tenn. App. 1972). *Town of Benton v. People's Bank,* 904 S.W.2d 598 (Tenn. App. 1995).

The record contains ample evidence of twenty years of continuous, open, visible and uninterrupted use of Martin Hollow Road by the public and by the employees and agents of Lincoln County. Since the term "exclusive" in the context of adverse possession means that the use must be exclusive as against the community or the public at large, see *House v. Close*, 346 S.W.2d at 448, we believe the requirement of exclusive use to be either meaningless or in need of some sort of fresh definition when we are speaking of an easement of way claimed by the County on behalf of the general public.

Finally, we believe that the requirement that possession be adverse and the requirement that the owner of the servient tenement know and acquiesce to the use of easement do not contradict each other. Rather, it directs us to the true meaning of adverse in this context -- it is sufficient if the claim of right under which the complainant operates is adverse to the title or interest of the owner of the servient tenement. The owner is not required to actively resist the use of the easement in

order for the use to be adverse. See 4 Words and Phrases *Adverse* pp. 157-161 (1955).

The case of *German v. Graham*, supra, is very instructive on the issues raised by the plaintiff in the case at bar. Mr. and Mrs. German and their tenant had used a right-of-way over the land of Mr. Graham and his predecessors in title for well over twenty years, though they had no deed or other official title to the easement. When Mr. Graham blocked the road, the Germans brought suit to enjoin him from doing so. The chancellor held that the court had no right to enjoin Mr. Graham in the use of his own land, because the Germans' use of the road was permissive rather than adverse.

This court reversed the chancellor. We held that to claim adverse use, it was not necessary to show actual hostility between the adverse user and the owner of the servient estate. All that was necessary was for the use to be under a claim of right inconsistent with or contrary to the interest of the owner.

The evidence showed that when Mr. Graham bought his property, he had actual knowledge that the Germans were using the road for access to their farm. He never asked them by what authority they were using the road, and never made any complaints or objections to that use. The court found that such conduct indicated that Mr. Graham understood the Germans to be using the road under a claim of right, and it held that their long usage under such a claim entitled them to a prescriptive easement in the right of way.

In the present case, Mr. Sanders purchased his property with the knowledge that Martin Hollow Road had long been freely used by his neighbors to access their land. But even if we consider that use to be permissive only, we believe the expenditure of public monies on the maintenance of Martin Hollow Road for over

twenty years should have alerted Mr. Sanders that the County was operating under a claim of right. The fact that Mr. Sanders acquiesced to the improvements on the road does not eliminate the adverse nature of the claim, any more than Mr. Graham's failure to make any complaints or objections to the Germans made their use merely permissive.

### III. The Extent of the Right

The fact that the public has acquired an easement across the Sanders' property does not necessarily mean that the public may require the Sanders to keep their cattle off the road. An easement may be for many purposes, but it usually involves only a right to ingress and egress and, in the absence of a provision to the contrary, the owner of the servient tenement may install gates or stock gaps to suit his own convenience. *Luster v. Garner*, 128 Tenn. 160, 159 S.W. 604 (1913); *Long v. Garrison*, 1 Tenn. App. 211 (1925). The owner of the right-of-way "may use it for any purpose that does not interfere with the easement*." Luster v. Garner*, 128 Tenn. at 162, 159 S.W. at 604.

A similar rule has been recognized in the case of a common law dedication. See *Cole v. Dych*, 535 S.W.2d 315 (Tenn. 1976). In *Burkitt v. Battle*, 59 S.W. 429 (Tenn. Ch. App. 1900), the Court of Chancery Appeals recognized that there may be a restricted dedication, as where the owner dedicates a pathway to the public for "foot passengers." The court, however, concluded that the way in question was a public road and issued an injunction against the defendants to "remove and abate the obstruction now on the road." 59 S.W. at 438.

We think that, nothing else appearing, once an implied or common law dedication has taken place and has been accepted by the public, the statutes giving the county certain authority over public roads come into full force and effect. These

statutes give the county officials the power to prevent obstruction of the road, Tenn. Code Ann. § 54-10-110, or to allow gates across roads of the third and fourth class when it will not materially prejudice the public. Tenn. Code Ann. § 54-10-108. Implicit in this scheme is the power to prevent the use of gates if they <u>would</u> materially prejudice the public. Our Supreme Court has said, "we are of the opinion that this statute is the only method by which a gate or obstruction may be erected or placed on a public road." *Harkins v. Ramsey*, 273 S.W.2d 1 at 2 (Tenn. 1954). Therefore, we hold that the County may prevent an abutting landowner from allowing his cattle to obstruct the road.

## IV. Equal Protection

The appellants also argue that the Board's resolution of March 17 was unconstitutional and void because it was partial in its operation, and was only intended to affect them. If the Board were applying a different standard or a different policy to them than to other residents of the county, then they might be correct. But we think the chancellor got it right when he wrote the following in his Memorandum Opinion:

> "If the resolution of March 17, 1997, were viewed in isolation, it might appear to single out and discriminate against the Plaintiffs. The evidence in the case, however, makes it clear that the actual situation was that the Plaintiffs were the lone offenders against a more general policy of the county. Other stock gaps which still exist elsewhere in the county are either in the process of being removed, are at points beyond which no one lives, or no one other than the party who maintains the gaps, or in areas where there is no problem with cattle having access to the road. The Plaintiffs' situation is unique in that removing the stock gaps on Martin Hollow Road will discourage the running of cattle on a publicly maintained road which is used by the general public. The policy is not discriminatory and is imminently (sic) reasonable. Removal of the stock gaps will not be enjoined."

## V.

- 10 -

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Lincoln County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE