IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 19, 2023 Session

## CHRISTOPHER B. PATTON ET AL. v. JILL MARIE CAMPOY

**Appeal from the Chancery Court for Cumberland County**
**No. 2922-CH-2170     Ronald Thurman, Chancellor**

_____

### No. E2023-00231-COA-R3-CV

_____

This is a declaratory judgment action in which the plaintiffs seek to establish that they have an ingress and egress easement over the portion of a once public road that crosses over their neighbor's property. The plaintiffs contend that they have a prescriptive easement or, in the alternative, a private access easement for ingress and egress because their properties abut the once public road that runs through the defendant's property. The chancery court found that the plaintiffs have a prescriptive easement for ingress and egress across the defendant's property. The defendant appeals. We affirm the trial court's finding that the plaintiffs have an easement across the defendant's property, albeit on different grounds. We have determined that the plaintiffs failed to prove a prescriptive easement; nevertheless, they have proven a private access easement over the defendant's property because their properties abut a once public road that passes through the defendant's property. Accordingly, we affirm as modified the decision of the trial court awarding the plaintiffs an ingress and egress easement over the defendant's property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified**

FRANK G. CLEMENT, JR., P.J., M.S. delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Matthew Janson McClanahan, Crossville, Tennessee, for the appellant, Jill Marie Campoy.

C. Douglas Fields, Crossville, Tennessee, for the appellees, Christopher B. Patton and Thomas E. Clayton, M.D.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The subject of this dispute is an access road (hereinafter "Old Ridge Road")[1] located in Cumberland County, Tennessee. The relevant section of Old Ridge Road crosses the northeast boundary of the property owned by Jill Marie Campoy ("Defendant") and continues on to provide access to the properties owned by Christopher B. Patton and Thomas E. Clayton, M.D. (collectively, "Plaintiffs," or "Mr. Patton" and "Dr. Clayton," individually).

On January 20, 2022, Plaintiffs filed their complaint for declaratory judgment to establish easement rights through Defendant's property and enjoin Defendant from further interference with their rights. Plaintiffs asserted that Old Ridge Road was a known public road that is no longer in use by the public and has become a private way by abutting owners.[2] Plaintiffs also asserted that they have established a prescriptive easement over Defendant's land to access their properties.

In the complaint, Mr. Patton alleged that he acquired title to his property on November 12, 2020, and "has used the roadway at issue since his acquisition of the property."[3] He also alleged that his predecessor in interest, Dorris Wendell Houston, acquired the property on November 8, 1990, and "had used the roadway at issue to access the property since his acquisition of title and will further testify it was in existence at that time and referenced in his deed and Plaintiff Patton's as the 'Old Ridge Road.'"[4] For his part, Dr. Clayton alleged that he acquired title to his property on April 8, 1991,[5] and "has used the roadway at issue to access his property since his acquisition of the property, that Old Ridge Road was identified as access at his time of purchase and was in existence at that time."

---

[1] Old Ridge Road has been known by a number of different names.

[2] Paragraph 18 of the complaint reads: "Plaintiffs assert Old Ridge Road was a known public way that is no longer in use by the public, but has become a private way by abutting owners."

[3] In November 2020, Mr. Patton acquired title to two properties via warranty deed, contiguous to the property of Dr. Clayton. The first property is a three-acre triangular tract (hereinafter "the Wells lot"), and the second property consists of two separate tracts of land. Mr. Patton's two tracts were joined for tax purposes. Thus, the Wells lot is not separately delineated on current tax maps.

[4] The land now owned by Mr. Patton was previously owned by Dorris Wendell Houston ("Wendell Houston"), the brother of Mr. Patton's grandfather. Wendell Houston acquired title to the land in November 1990. Upon transfer of title to Mr. Patton, Wendell Houston retained hunting rights and continues to use Old Ridge Road to access Mr. Patton's property.

[5] In April 1991, Dr. Clayton and his wife Dorothy Renee Clayton acquired title to six tracts of land via warranty deed.

In February 2021, Defendant acquired title to two tracts of land bordering the properties owned by Plaintiffs. Defendant purchased the property from the heirs of Rita Clayborn and Chester Clayborn. The Clayborns had owned the property as tenants by the entirety since September 1988. After the death of Chester Clayborn, Rita Clayborn became the sole owner of the property as the surviving spouse. Defendant testified that Rita Clayborn gave her clear title with no mention of an easement or right-of-way, and there is no indication of either on the deed.

In 2007, fifteen years prior to the commencement of this action, Chester Clayborn had approached Wendell Houston and Dr. Clayton and asked for permission to build a gate (hereinafter "the North Gate") across Old Ridge Road due to concerns with trespassers.[6] Mr. Houston and Dr. Clayton agreed, and they each received a key to unlock the gate. After Mr. Patton and Defendant acquired title to their properties, they also received keys to the North Gate.

Shortly after Defendant acquired her property in 2021, she noticed an unknown vehicle parked on her land. Defendant's son investigated and discovered that the vehicle belonged to Mr. Patton, who informed Defendant's son that he had removed the North Gate's previous lock and had replaced it with a combination lock. Although Mr. Patton provided Defendant with the combination, Defendant was confused as to why Mr. Patton was able to access her property.

Shortly thereafter, Defendant contacted her attorney to verify whether her property was subject to an easement. Defendant's attorney informed her that there were no easements, roads, or driveways through her property.

Then, in July 2021, Defendant noticed that the North Gate had been left open. Fearing that her livestock might escape, Defendant had the North Gate removed and a new fence and gate were installed across Old Ridge Road. Defendant did not provide Plaintiffs with a key to the new gate, and Plaintiffs were thus blocked from accessing their respective properties via Old Ridge Road. Defendant asserted that Plaintiffs could instead access their properties via Willis Houston Road, Marion Agee Road, or by traveling over the Smith family property.

As a consequence of being denied access to Old Ridge Road, Plaintiffs commenced this action to establish their easement rights through Defendant's property and to enjoin Defendant from further interference with their ingress and egress. In pertinent part, the complaint stated:

6. Plaintiff, Patton, acquired title to his property at issue on November 12, 2020, and has used the roadway at issue since his acquisition of the property.

---

[6] Plaintiffs assert that Chester Clayborn's request was a recognition of their established use and right of access across his land.

7. Plaintiff Patton's Grantor, Dorris Wendell Houston, acquired the property on November 8, 1990 and had used the roadway at issue to access the property since his acquisition of title and will further testify it was in existence at that time and referenced in his deed and Plaintiff Patton's as the "Old Ridge Road."

8. Plaintiff, Clayton, acquired title to his property at issue on April 8, 1991, and has used the roadway at issue to access his property since his acquisition of the property, that Old Ridge Road was identified as access at his time of purchase and was in existence at that time.

9. Defendant, Campoy, acquired title to her property on February 24, 2021 from Rita Clayton a/k/a Martha Clayton, who held title individually by tenancy by entireties after the death of her husband Chester Clayton. The Clayton's had owned the property since September 16, 1988.

. . . .

11. Although not clearly visible on the map, the roadway continues through the Patton tract, along the mountain ridge and over to the Clayton tract.

12. Patton, Clayton and formerly Houston, maintained a locked gate across Old Ridge Road restricting access.

13. After Campoy acquired title to her property and Patton had installed a new lock, he provided her the combination so she could open the gate if needed and there did not seem to be any dispute.

14. Nearly a year later, however, Campoy took down the gate and installed a fence across the roadway, blocking the access of Patton and Clayton.

. . . .

18. Plaintiffs assert Old Ridge Road was a known public way that is no longer in use by the public, but has become a private way by abutting owners.

19. Alternatively, Plaintiffs assert a prescriptive easement exists over Defendant's land to access their properties from East Valley Road.

20. Plaintiffs assert the roadway has been in open and continuous use for over twenty years and that said use has been made as a matter of right, and not permission, so that an easement exists by Tennessee Law.

- 4 -

21. While neither Plaintiff currently resides on their land, their use has been consistent and regular, open and notorious.

Defendant filed an answer in which she admitted that Plaintiffs owned property adjoining hers but denied that this dispute involved "an access road" and denied that they had any rights or easement to cross her property. Defendant also contended that Dr. Clayton lacked standing to bring this action "as the trail's usage does not affect his rights or property usage as he has clear and established access at Willis Houston Road." She also alleged that Plaintiffs had failed to join all necessary parties to this action who have an interest in the real property at issue, referring to adjoining properties owned by the Agee family,[7] the Smith family,[8] and the unknown heirs of Samuel Houston.

In preparation for trial and to preserve the testimony, Plaintiffs sought to depose two elderly witnesses who had historic knowledge of the matters at issue. One was Samuel Houston,[9] the previous owner of the Wells lot that was now owned by Mr. Patton. The other witness was Wendell Houston, who was Mr. Patton's predecessor in title and the brother of Samuel Houston. Their evidentiary depositions were set for December 2022; however, the depositions were cancelled because, just before the depositions were to begin, Defendant's attorney was exposed to COVID-19. Given the witnesses' poor health, the depositions were delayed by mutual agreement of the parties, but their depositions were never rescheduled due to the approaching January 23, 2023 trial date.

In the interim, Defendant was represented by three attorneys over the course of the proceedings in the trial court. First, Defendant retained William Ridley who represented her until withdrawing because he was selected as Cumberland County General Sessions Judge. Then Defendant retained Edward L. Boring, and the court entered an agreed order of substitution of counsel on January 10, 2023. Nine months later, on September 22, 2022, the court entered an agreed order scheduling the trial for January 23, 2023. However, less than two weeks before trial, Defendant dismissed Mr. Boring and retained the services of her third attorney, Matthew J. McClanahan. An agreed order of substitution of counsel was entered on January 10, 2023.

Defendant then filed a motion to continue the trial, which was denied. On January 17, 2023, Defendant filed a motion to reconsider the prior ruling denying her motion to continue. Defendant argued that the January 23, 2023 trial date would cause harm to her

---

[7] The Agee family includes Gregory and Karen Agee, and Fred and Myra Sue Agee Sullivan.

[8] The Smith family includes Charles Kenneth Swafford and Russell Smith, Jeffrey Smith, Lisa Islamovic, Jennifer Smith, Ronald Smith, and Rain Smith.

[9] Samuel Houston is also Mr. Patton's great-grandfather.

ability to mount a vigorous defense since she had recently acquired new representation, the case was not yet a year old, and depositions had been delayed.

Concomitantly, Defendant filed a motion for joinder of additional necessary parties. Defendant claimed that, under Tennessee Code Annotated § 54-14-103, Plaintiffs must name as defendants the owners of adjoining land where the easement at issue could possibly be located. First, Defendant argued that the heirs of Sam Houston should be added as necessary parties because Old Ridge Road crosses over their property. Defendant also argued that, because the location of Old Ridge Road is in dispute and it may traverse over adjoining tracts of land, the owners of those adjoining parcels—the Smith family and the Agee family—should also be joined as necessary parties. Plaintiffs responded, noting that the declaration sought only involves Defendant's and Plaintiffs' properties and property rights, and no other landowners, and it does not involve taking of property or creating an easement where none exists.

On January 25, 2023, the trial court entered an order denying both motions. The trial court found that Plaintiffs, not Defendant, had scheduled the depositions of Sam and Wendell Houston to preserve their testimony, and that Plaintiffs had done so due to concerns regarding the witnesses' health and potential unavailability, rather than for discovery or trial preparation. Regarding Defendant's request to join additional necessary parties, the court found that the declaratory judgment action was specific to Defendant's land and whether there is an old abandoned public road that crosses it, resulting in an easement right for Plaintiffs. The court held that adjudication of those specific issues would not affect the rights or interests of any third parties; thus, it was not necessary to join others as parties. Because the court denied both motions, the case proceeded to trial as scheduled on January 23, 2023.

The witnesses who testified at trial included Plaintiffs, Defendant, Samuel Houston, Wendell Houston, Greg Agee, Hilda Maria Braun, Warner Braun, Jim Kerley, Terry Powell, and Cherie Clayborn. Plaintiffs testified that from the time that they had acquired title, they had relied on Old Ridge Road to access their respective properties via Defendant's property. Dr. Clayton testified that Old Ridge Road is the only reasonable way for him to access the southern half of his property. Although another road, Willis Houston Road, provides access to the northern portion of Dr. Clayton's property, Dr. Clayton stated that he is unable to access the southern portion of his property using Willis Houston Road as it requires that he cross over a spring-fed creek that can fill with three to four feet of water during the winter months. Likewise, Mr. Patton testified that Old Ridge Road is the only way for a normal vehicle to get back to his land. Also, both Plaintiffs testified that they utilized their respective properties almost year-round, primarily for various types of hunting and trapping, except for in July and August when the ticks were bad.

- 6 -

After closing arguments, the trial court orally rendered detailed findings of fact and conclusions of law from the bench. The final order, which incorporated by reference the transcript of its oral ruling, was entered on February 6, 2023, in which the court found:

> The roadway at issue was, at one time, a public road, and the Old Ridge Road referenced in Plaintiff, Christopher Mr. Patton's deed, has existed for a long time. There are old home sites along the road that have been abandoned and that over time, the old road has been abandoned by the public. Although a specific time of abandonment is not clear, it is clear to the Court that at the time the road was obstructed by a locked gate with the agreement of Plaintiffs Clayton's and Patton's predecessors in title, and Defendant's predecessor in title, Clayborn, public use necessarily ceased.

> The Court finds the roadway is eight to ten (8-10) feet in width and that the use of the road by Clayton has continued such that he retains a prescriptive easement and that although Plaintiff Patton's use was cut off by Defendant's actions, he was likewise using the road and his predecessor also made regular use of the road. That tacking applies to these uses so that Plaintiff Patton also holds a prescriptive easement.

The court held that Plaintiffs may use Old Ridge Road for ingress and egress to their respective tracts of land. The court also ordered Defendant to restore the gate entrance in a reasonable time and provide Plaintiffs with keys or a combination. This appeal followed.

## ISSUES

Defendant raises three issues on appeal, which we restate as follows:

I.     Whether Plaintiffs failed to join necessary parties to their complaint for declaratory judgment;

II.    Whether the trial court abused its discretion in not granting Defendant's motion for continuance; and

III.    Whether Plaintiffs failed to prove by clear and convincing evidence that an easement existed.

## STANDARD OF REVIEW

This cause was heard by way of a bench trial. "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, "appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of

the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013) (citing Tenn. R. App. P. 13(d)). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## ANALYSIS

### I. NECESSARY PARTIES

The first issue before this court is whether Plaintiffs failed to join necessary parties to their complaint for declaratory judgment.

Trial courts have the discretion to determine who should be made parties to proceedings for declaratory judgment as well as whether to grant or deny a declaratory judgment. *Timmins v. Lindsey*, 310 S.W.3d 834, 839 (Tenn. Ct. App. 2009) (citing *Huntsville Util. Dist. of Scott Cnty., Tenn. v. Gen. Tr. Co.*, 839 S.W.2d 397, 399 (Tenn. Ct. App. 1992)). Thus, we will review the trial court's denial of Defendant's motion for joinder of all necessary parties under an abuse of discretion standard.[10] *Tenn. Farmers Mut. Ins. Co. v. DeBruce*, 586 S.W.3d 901, 905 (Tenn. 2019) (citing *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010); *Rogers v. Estate of Russell*, 50 S.W.3d 441, 444 (Tenn. Ct. App. 2001)).

In her brief, Defendant states the following in regard to this issue:

The Plaintiffs/Appellees seek to access their respective properties via a purported access road leading from East Valley Road, crossing over the real property belonging to the Sam Houston heirs, then over the real property belonging to Jill Campoy, before finally entering the real property belonging to Chris Patton, and eventually the real property belonging to Dr. Clayton. As evidenced by the record, only Jill Campoy was made a party to this suit and the Plaintiffs/Appellees failed to join necessary parties that have had their real property rights abridged and impacted by the trial court's ruling.

---

[10] "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Tenn. Farmers Mut. Ins. Co.*, 586 S.W.3d at 905 (citing *Henderson*, 318 S.W.3d at 335) (citation omitted). We presume that the trial court's discretionary decision is correct, and we review the evidence in the light most favorable to the trial court's decision. *Id.* (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

For this reason, the trial court's ruling should be overturned and the Plaintiffs/Appellees should have to refile their case by joining and identifying these necessary parties.

Defendant claims that Tennessee Code Annotated § 54-14-103 compels the joinder of the owners of the land over which Old Ridge Road *could possibly cross*. In her answer to the complaint, she identifies the following as potential parties: the Agee family, the Smith family, and the unknown heirs of Samuel Houston. In making this argument she relies on Tennessee Code Annotated § 54-14-103, which provides, in pertinent part:

> (a) The person or persons desiring to secure an easement or right-of-way may file their petition in the county where any of the lands affected by the proceedings lie:
>> (1) Making all parties owning or interested in any or interested in any way in the lands, or property to be affected by the easement or right-of-way parties defendant to the proceedings.

Tenn. Code Ann. § 54-14-103.

Defendant also relies on *Barge v. Sadler*, 70 S.W.3d 683 (Tenn. 2002), wherein the Tennessee Supreme Court construed Tennessee Code Annotated § 54-14-103 as requiring a plaintiff to name as defendants the owners of adjoining land where an easement could possibly be located. *Id.* at 689. Thus, Defendant argues that because Old Ridge Road could possibly cross over the properties of adjoining landowners, those landowners should be added as necessary parties to this cause under Tennessee Code Annotated § 54-14-103.

In their response in opposition to Defendant's motion to add parties to the case, Plaintiffs noted that there "is no other person identified whose rights or interests will be affected by this Court's determination of the two issues raised specifically in regard to Defendant[']s land only." Instead, they noted, "Plaintiffs assert an old public road crosses Defendant[']s property. While it has been abandoned by the general public . . . Plaintiffs assert whether closed officially, or abandoned by the general public, landowners adjacent to it have an easement to use it if it is reasonably necessary to enjoy their land. *See H[a]ll v. Pippin*, 984 S.W.2d 617 (Tenn. Ct. App. 1998)." Plaintiffs also asserted that "[p]arties with remote interests need not be made parties. *Timmins v. Lindsey*, 310 S.W.3d 384, 389 (Tenn. Ct. App. 2009)."

The trial court was not persuaded by Defendant's argument, and neither are we. Plaintiffs' complaint for declaratory judgment merely seeks to declare their right of ingress and egress over Defendant's property—not over any other properties. Moreover, this action is not brought under Tennessee Code Annotated § 54-14-103, the statute upon which Defendant's motion is based. To the contrary, this is a declaratory judgment action that is brought under Tennessee Code Annotated § 29-14-107, the Tennessee Declaratory Judgment Act ("the Act"). Under the Act, "[c]ourts . . . have the power to declare rights,

status, and other legal relations whether or not further relief is or could be claimed." *Tenn. Farmers Mut. Ins. Co.* 586 S.W.3d at 906; Tenn. Code Ann. § 29-14-102(a) (2012). Tennessee Code Annotated § 29-14-107(a) provides:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings.

"The non-joinder of necessary parties is fatal on the question of 'justiciability' which, in a suit for a declaratory judgment, is a necessary condition of judicial relief." *Wright v. Nashville Gas & Heating Co.*, 194 S.W.2d 459, 461 (Tenn. 1946). "This does not mean, however, that all persons who might be remotely affected need [be] joined." *Shelby Cty. Bd. of Comm'rs v. Shelby Cty. Q. Court*, 392 S.W.2d 935, 940 (Tenn. 1965). The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations[.]" *Reed v. Town of Louisville*, No E2006-01637-COA-R3-CV, 2007 WL 816521, at *2 (Tenn. Ct. App. Mar. 19, 2007) (citations omitted) (internal quotation marks omitted). Thus, a party may be necessary if it claims an interest in the property that is the subject of litigation. *Adler v. Double Eagle Props. Holdings, LLC*, No. W2010-01412-COA-R3CV, 2011 WL 862948, at *4 (Tenn. Ct. App. Mar. 14, 2011) (citations omitted).

In the present case, Defendant contends, but fails to provide sufficient evidence, that the rights of the adjoining landowners—the Smith family, the Agee family, and the Sam Houston heirs—would be affected by the trial court's declaration. In the case at bar, the trial court's declaration merely granted Plaintiffs an easement over the portion of Old Ridge Road that crosses Defendant's property. Significantly, the trial court's ruling does not grant either Plaintiff the right to cross over portions of Old Ridge Road that may or may not traverse the properties of other landowners.

Plaintiffs' only dispute in this cause is with Defendant. Thus, we hold that the trial court did not abuse its discretion in finding that this declaratory judgment action is specific to Defendant's property, and that it does not affect the interests of the adjoining landowners to warrant their addition as necessary parties.

Accordingly, we affirm the trial court's denial of Defendant's motion to join other parties.

## II. DEFENDANT'S MOTION FOR A CONTINUANCE

Defendant contends that the trial court abused its discretion by denying her motion to continue the trial to a later date and argues that she is entitled to a new trial on remand.

We review the granting or denial of a motion for a continuance under an abuse of discretion standard. *See In re C.T.S.*, 156 S.W.3d 18, 22 (Tenn. Ct. App. 2004); *see also Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) ("The granting or denial of a motion for a continuance lies in the sound discretion of the court") (citation omitted). "In order to show an abuse of discretion, the moving party must show some ***prejudice*** or ***surprise*** which arises from the trial court's failure to grant the continuance." *Commission of Dept. of Transp. v. Hall*, 635 S.W.2d 110, 111 (Tenn. 1982) (emphasis added) (citation omitted). Decisions regarding continuances are fact-specific, and thus, should be viewed in the context of the circumstances existing when the motion is filed. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). "Among the factors that courts consider are: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (footnotes omitted).

The party seeking a continuance carries the burden of proving the circumstances that justify the continuance. *Howell v. Ryerkerk*, 372 S.W.3d 576, 580 (Tenn. Ct. App. 2012) (citing *Osagie v. Peakload Temp. Services*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002)). This burden will be met if the moving party supplies some "strong excuse" for postponing the trial date. *Id.* (citing *Barber & McMurry, Inc. v. Top-Flite Dev. Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)) (citation omitted).

Defendant was represented by three different attorneys during the twelve months that this matter was pending in the trial court. The case was commenced on January 20, 2022. On May 19, 2022, Defendant retained substitute counsel after her first attorney was named to fill the unexpired term of the sitting General Sessions Judge of Cumberland County. After Defendant obtained substitute counsel, an agreed order was entered on September 22, 2022, setting the case for trial on January 23, 2023. Then on January 10, 2023, a mere two weeks prior to trial, Defendant dismissed her second attorney, retained the services of Matthew McClanahan, and filed a motion to continue the trial date,[11] which the trial court denied. Then Defendant filed a motion to reconsider the prior ruling denying her request for a continuance, which the trial court also denied.

On appeal, Defendant submits that the trial court abused its discretion in denying her motion for continuance in light of the fact that her case had only been pending for a year, her new attorney immediately sought the continuance upon being retained, and her new attorney only had two weeks to prepare for trial. For these reasons, she claims that she was placed at a significant disadvantage if the trial were not continued. We note, however, that the record fails to provide a factual basis to support Defendant's conclusory statements that denying the motion caused harm to Defendant's ability to mount a vigorous defense.[12]

---

[11] The motion to continue is not included in the record on appeal.

[12] These conclusory statements are set forth in Defendant's motion to reconsider, which is included in the record.

Defendant's decision to discharge her second counsel and to retain Mr. McClanahan was voluntary, meaning that there is no proof that her second counsel abandoned her. Moreover, Defendant was aware of the trial date when she retained Mr. McClanahan. Thus, Defendant should have foreseen that her counsel would have limited time to prepare for trial.[13] As this court judiciously explained in *Barish v. Metro. Gov't of Nashville & Davidson Cnty. Tenn.*, 627 S.W.2d 953 (Tenn. Ct. App. 1981), if a trial court were to grant a continuance to every party who decided to dismiss its attorney shortly before trial, then "every litigant could keep changing lawyers shortly before trial, seek and obtain a continuance and never have to face the 'day of reckoning.'" *Id.* at 954.

This Court must consider "the prejudice to the requesting party if the continuance is not granted." *Howell*, 372 S.W.3d at 582 (quoting *Nagarajan*, 151 S.W.3d at 172). Here, however, there is no evidence to support a finding that Defendant was prejudiced by the denial of her motion for a continuance. Conversely, there is evidence to support a finding that Plaintiffs may have been prejudiced by a continuance of the trial date because a delay of trial would have risked the unavailability of two of Plaintiffs' witnesses who were elderly—Sam and Wendell Houston—and who had historical knowledge of Old Ridge Road.

For the foregoing reasons, we find no basis on which to conclude that the trial court abused its discretion in denying Defendant's motion for continuance. Thus, we affirm the trial court on this ground.

## III. EASEMENT

Defendant contends that the trial court erred in finding that Plaintiffs have a prescriptive easement across over Old Ridge Road that crosses over Defendant's land. For their part, Plaintiffs contend that the trial court correctly found that a prescriptive easement exists. Plaintiffs also contend that they proved that they have a private access easement over Old Ridge Road based on the legal principle that "[o]wners of property abutting a once public road continue to have a private access easement over the road to their property even after the road loses its character as a public road." *See Hall*, 984 S.W.2d at 620.

---

[13] This court has previously held that a trial court's denial of a motion for continuance is not in error when the moving party willingly dismisses its previous counsel shortly before trial. *See Holley v. Ortiz*, No. M2015-01432-COA-R3-CV, 2017 WL 729754, at *6 (Tenn. Ct. App. Feb. 24, 2017) (Finding that denial of a motion for continuance was proper when the plaintiffs dismissed their counsel days before trial, and were thus responsible for their predicament); *see also State Dep't of Child.'s Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008) (Finding that a trial court did not err in denying a mother's motion for continuance when she dismissed her former attorney forty-five days before her parental termination proceeding).

We have determined that Plaintiffs failed to prove by clear and convincing evidence all of the essential elements for a prescriptive easement. However, we conclude that Plaintiffs proved that they have a private access easement over Defendant's property via the former public road, Old Ridge Road, because their properties abut the former public road, which they used for ingress and egress to their properties.

## A. Prescriptive Easement

An easement creates an enforceable right to use another's property for a specific purpose. *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996) (citation omitted). A right-of-way across another's property is the most common form of easement. *Shew v. Bawgus*, 227 S.W.3d 569, 578 (Tenn. Ct. App. 2007) (quoting *Stinson v. Bobo*, No. M2001-02704-COA-R3-CV, 2003 WL 238723, at *3 (Tenn. Ct. App. Feb. 4, 2003)). The requisite factors to be established and the burden of proof required to establish a prescriptive easement are succinctly explained in *Link v. Hinson*, No. M2019-00483-COA-R3-CV, 2020 WL 4150719 (Tenn. Ct. App. July 20, 2020) as follows:

> "A prescriptive easement is an implied easement premised on the use of another's property rather than the language in a deed." *Shew*, 227 S.W.3d at 578 (quoting *Stinson*, 2003 WL 238723, at *3). The creation of a prescriptive easement requires that the use of the property be for the full prescriptive period, "adverse under a claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient estate." *Pevear*, 924 S.W.2d at 116 (citing *Keebler v. Street*, 673 S.W.2d 154, 156 (Tenn. Ct. App. 1984)); *see also House v. Close*, 346 S.W.2d 445, 447 (Tenn. Ct. App. 1961), *perm. app. denied* (Tenn. May 26, 1961). "[T]he prescriptive period in Tennessee is 20 years." *Pevear*, 924 S.W.2d at 116 (citing *Callahan v. Town of Middleton*, 292 S.W.2d 501, 509 (Tenn. Ct. App. 1956)). Tennessee courts have held that in establishing the full prescriptive period, parties may "tack" their adverse possession onto that of predecessors in title. *Derryberry v. Ledford*, 506 S.W.2d 152, 156 (Tenn. Ct. App. 1973), *perm. app. denied* (Tenn. March 4, 1974). However, as stated by this court, "[t]acking requires that the combined periods be successive, that each possession must meet the elements of prescriptive easement, and that the possessions be in privity." *Thompson v. Hulse*, No. E1999-02474-COA-R3-CV, 2000 WL 124787, at *3 (Tenn. Ct. App. Jan. 26, 2000).

*Id*. at *4.

In order to acquire an easement by prescription, the plaintiff must demonstrate, by clear and convincing proof, adverse use which is under a claim of right, continuous, open, visible, and exclusive, with the knowledge and acquiescence of the owner of the servient tenement, and that has continued for the full prescriptive period while the owner of the servient tenement was under no legal disability to assert his right to make a grant. *Harrison*

- 13 -

*v. Mullenix*, No. 03A01-9312-CH-00465, 1994 WL 481399, at *3 (Tenn. Ct. App. Sept. 7, 1994) (citing *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. Ct. App. 1991); *House v. Close*, 346 S.W.2d 445, 447 (Tenn. Ct. App. 1961)). In this case, however, the proof fails to clearly and convincingly establish each and every element of a prescriptive easement.

A prescriptive easement can only be found to exist where use of property is adverse. *Id*. at *4. In order to be adverse, use must be:

> under a claim of right inconsistent with or contrary to the interest of the owner of such a character that it is difficult or impossible to account for it except on the presumption of a grant, or use under a claim of right known to the owner of a servient tenement; or use whenever desired without license, or permission asked, or objection made such as the owner of an easement would make of it, disregarding entirely the claims of the owner of the land.

*Id*. (quoting *House*, 346 S.W.2d at 447–48). However, actual hostility between the claimant of adverse use and the title owner is not required to establish prescription. *Id*. (citing *German v. Graham*, 497 S.W.2d 245, 248 (Tenn. Ct. App. 1972)). This prerequisite merely requires that by his words or conduct, the dominant user must impliedly or expressly inform the servient owner of his intent to adversely use.

Stated another way, a claimant's use may not be permissive. *City of Whitwell v. White*, 529 S.W.2d 228, 230 (Tenn. Ct. App. 1974). More specifically, implied or express permissive use cannot ripen into an easement by prescription. *Callahan v. Town of Middleton*, 292 S.W.2d 501, 508 (Tenn. Ct. App. 1954). Whether use of property is permissive or adverse is normally a question for the trier of fact. In this case, the evidence preponderates in favor of the finding that Dr. Clayton and Mr. Patton's predecessor in interest were using the road with the consent of the servient owner, Chester Clayborn.[14] The evidence also preponderates in favor of the trial court's finding that Old Ridge Road was a public road until Chester Clayborn built a fence across the road in 2007. Thus, Dr. Clayton's use of the road was not adverse throughout the twenty-year statutory period, and Mr. Patton's use may not be tacked to that of his predecessor in interest to meet the statutory period. As a consequence, Plaintiffs are unable to prove one of the essential elements to establish a prescriptive easement.

Accordingly, we reverse the trial court's determination that Plaintiffs possess a prescriptive easement across Old Ridge Road. However, this does not end our inquiry. We next turn our attention to Plaintiffs' claim that they have a private access easement over the once public Old Ridge Road.

---

[14] This consent is evidenced by the fact that Chester Clayborn asked for permission from Dr. Clayborn and Wendell Houston to construct the North Gate.

## B. Private Access Easement

In their complaint, Plaintiffs asserted that Old Ridge Road, which abuts both of their properties, was a known public road that is no longer in use by the public and has become a private way by abutting owners, affording them a private access easement over the road.

 "Owners of property abutting a once public road continue to have a private access easement over the road to their property even after the road loses its character as a public road." *Hall*, 984 S.W.2d at 620. "An abutting owner has a greater interest than the general public, and has an easement of access over the road to his premises, even after a public road is abandoned." *Cockroft v. Claunch*, No. 02A01-9108-CH-00164, 1992 WL 69621, at *4–5 (Tenn. Ct. App. Apr. 8, 1992) (citing *Current, et al., v. Stevenson, et al.*, 173 Tenn. 250, 116 S.W.2d 1026 (1938)). An abutting owner has two distinct kinds of rights in a highway: a public right, which is enjoyed in common with all other citizens, and certain private rights which arise from their ownership of property contiguous to the highway, and which are not common to the public generally. *Id.*

A private access easement "is limited to the street or way upon which his [property] is situated and in such other streets or ways as are necessary or convenient to their ingress or egress." *Jacoway v. Palmer*, 753 S.W.2d 675, 678 (Tenn. Ct. App. 1987) (citing *State v. Hamilton*, 109 Tenn. 276, 70 S.W. 619 (1902). However, for there to be a private access easement, there must be a threshold determination that the street was once public. *Buckingham v. Thomas*, No. 02A019412CH00278, 1996 WL 20527, at *3 (Tenn. Ct. App. Jan. 16, 1996).

Here, the trial court specifically found that Old Ridge Road "was, at one time, a public road," but that, as stated above, public use of the road ceased in 2007 when Chester Clayton constructed the North Gate. The court further found in his oral ruling that:

> There initially was a public road, because there's homesites up and down there. Obviously, the public has used this. I think one side said it was a path and the other one says it's a road. It's just this area that's easily recognizable on Exhibit 8, which has earlier been called Old Ridge Road. There has been traffic by the general public up and down in years gone by, but it's basically been abandoned whenever the parties started closing it off to keep poachers off of it. I think Mr. Clayborn did that . . . [b]ut I think clearly by clear and convincing evidence I think that that has been used by the plaintiffs for years. And I think that is corroborated by Mr. Houston's testimony, Mr. Sam Houston and Mr. Wendell Houston's testimony, as well as the plaintiffs, and Mr. Chris Patton's.

The testimony relied upon by the trial court included testimony by sixty-three-year-old Sam Houston, who stated that he had grown up in the area where Old Ridge Road was located, and that his uncle—Wendell Houston—and other property owners had also used

Old Ridge Road to access the land behind Defendant. Sam Houston also stated that he thought that the road had been there for about one hundred years. Moreover, Plaintiffs testified that Old Ridge Road was once used to access multiple home sites, which have since been abandoned. One such residence, known as the Hedgecoth home, is situated on what is now Dr. Clayton's property. Dr. Clayton testified that the Hedgecoth home was accessed by way of Old Ridge Road. Further, Mr. Patton testified that Old Ridge Road was probably used as a wagon trail in the 1800s or 1900s. Wendell Houston also testified that, around the year 2000, the Clayborns granted him an easement to place electric poles on their land so that he could have power lines installed alongside Old Ridge Road and provide electricity to the Wells lot.

The evidence preponderates in favor of the trial court's finding that Old Ridge Road was once a public road. The above testimony demonstrates that Old Ridge Road was once used to access multiple residences and that there was traffic on the road by the general public until Chester Clayton constructed the North Gate across the road and public use ceased.

Based on the above and other evidence in the record, we conclude that Plaintiffs, as abutting property owners to Old Ridge Road, which was once a public road, retain a private right to use Old Ridge Road for ingress and egress to their respective properties. Accordingly, we affirm, albeit on different grounds, the trial court's finding that Plaintiffs have an ingress and egress easement over Old Ridge Road as it crosses Defendant's property. *See City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004) (citations omitted) ("The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result").

## IN CONCLUSION

The judgment of the trial court is affirmed as modified, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellant, Jill Marie Campoy.

_____
FRANK G. CLEMENT JR., P.J., M.S.